UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
SOUTHERN DIVISION
AT LONDON

| | |
|---|---|
| GUIDEONE ELITE INSURANCE COMPANY,<br><br>Plaintiff,<br><br>V.<br><br>LANDMARK SPRINKLER, INC.,<br><br>Defendant. | CIVIL ACTION<br>NO. 6:16-CV-50-KKC-EBA<br><br><br>**OPINION AND ORDER** |

\*\*\* \*\*\* \*\*\*

This matter is before the Court pursuant to two Motions for Summary Judgment, one filed by Plaintiff GuideOne Elite Insurance Company (DE 39) and the other filed by Defendant Landmark Sprinkler, Inc. (DE 53). For the following reasons, Plaintiff's motion is **GRANTED IN PART** and **DENIED IN PART**, and Defendant's motion is **DENIED**.

## I. INTRODUCTION

In 2013, Landmark Sprinkler, Inc. ("Landmark") performed an annual inspection of the dry sprinkler system at Laurel Heights Home for the Elderly ("Laurel Heights").

On January 8, 2014, water discharged from a ruptured sprinkler head that was connected to the dry sprinkler system, causing water damage to the Laurel Heights facility. Laurel Heights' insurer, GuideOne, alleges that it paid restoration costs of $607,442.29 according to the terms and provisions of Laurel Heights's insurance policy. (DE 39-1 at 2). In this subrogation action, GuideOne seeks to recover the restoration costs from Landmark on grounds of negligence, negligent misrepresentations, and breach of contract. (DE 1). The Court considers the parties' arguments regarding summary judgment below.

1

## II. ANALYSIS

### A. Legal Standards

Summary judgment is proper "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The moving party bears the initial burden and must identify "those portions of the pleadings...which it believes demonstrate the absence of a genuine issue of material fact." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986) (internal citation omitted).

Once the movant meets the initial burden, the opposing party "must set forth specific facts showing that there is a genuine issue for trial." Fed. R. Civ. P. 56(e). In the Court's consideration of the motion, "the evidence should be viewed in the light most favorable to the non-moving party." *Ahlers v. Schebil*, 188 F.3d 365, 369 (6th Cir. 1999) (citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255, 106 S.Ct. 2505 (1986)).

The parties have invoked the diversity jurisdiction of the Court, meaning the substantive law of the Court's forum state, Kentucky, will apply. *See State Auto Property and Cas. Ins. Co. v. Hargis,* 785 F.3d 189, 195 (6th Cir. 2015).

### B. Plaintiff GuideOne's Motion for Partial Summary Judgment (DE 39)

Plaintiff GuideOne seeks partial summary judgment on damages, arguing that Landmark has failed to rebut its expert witness regarding the reasonable cost of restoring the Laurel Heights facility. (DE 39-1). In addition, GuideOne seeks dismissal of several affirmative defenses originally pled in Landmark's answer. *Id.* The motion is granted in part and denied in part.

*i. Damages*

The Kentucky Supreme Court has upheld two distinct types of damages in injury-to-property cases: (1) diminution in fair market value of the property when the injury is permanent; and (2) reasonable restoration costs when the injury is temporary. *Ellison v.*

*R&B Contracting, Inc.,* 32 S.W.3d 66, 69 (Ky 2000). Kentucky courts generally determine whether an injury is permanent or temporary by comparing the two potential damage figures. *See Worldwide Equipment Enterprises, Inc. v. Broan-Nuton LLC,* 191 F.Supp.3d 684, 687-88 (E.D. Ky. 2016). But when there is no evidence of fair market value, the correct measure of damages is reference to the reasonable restoration costs. *See Arch Ins. Co. v. Broan NuTone, LLC,* 509 Fed.Appx. 453, 461 (6th Cir. 2012); *see also WorldWide Equipment Enterprises, Inc.,* 191 F.Supp.3d at 690-91 ("[I]f the defendants choose not to present any evidence of diminution in value, then the presumption is that the diminution in value is equal to the replacement costs"). Finally, the Kentucky Supreme Court instructs that, "[q]uestions regarding the cost of repairing a particular injury to real estate and the extent of any diminution in fair market value of the real estate as a result of an injury are questions of fact." *Ellison,* 32 S.W.3d at 70.

Here, the Court has been presented with neither argument nor evidence that the injury was permanent—the Court has been shown no evidence of fair market value. Instead, the parties disagree as to what figure represents the reasonable cost of repair. Plaintiff GuideOne's expert on damages, Scott McCurdy—an owner of the contracting company that remediated the damages at Laurel Heights—is prepared to testify that $552,168.04 was the reasonable cost of restoration. Defendant Landmark disputes this figure with various pieces of evidence.

Landmark points to the report of Ben Wade, an independent adjuster employed by U.S. Adjusting Services and hired by GuideOne to provide an initial estimation of the Laurel Heights claim. Wade estimated that the replacement cost value for the claim was $112,539.43. (DE 43-5 at 10; DE 43-6 at 48). Wade determined in a later revised estimate that the actual cash value of the loss was $133,192.87. (DE 43 at 6).

Two narratives have emerged regarding this figure. GuideOne argues that Wade's estimation was limited in scope, and was never meant to estimate the complete cost of restoration. Landmark argues that GuideOne disagreed with the contracting company's repair bill as representing the reasonable cost of repair, which exceeded Wade's estimate by hundreds of thousands of dollars, but ultimately made a business decision to pay the bill. Taking the facts in a light most favorable to Landmark, a fact question exists, and summary judgment is inappropriate at this stage.

At least some evidence in the record, specifically deposition testimony, supports the notion that GuideOne employees had a disagreement regarding the amount of an appropriate estimate and the contractor's repair price.[1] Further, a correspondence between Mike Pszanka, Wade's supervisor at U.S. Adjusting Services, and Carolyn Partsch, a GuideOne adjuster, discusses the "huge discrepancy" between the initial field adjuster's estimate and the contractor's repair price. (DE 43-12). The "discrepancies narrative" attached to the correspondence compares specific components of the two estimates and attempts to explain the difference in pricing, often noting difference in quality and scope of repair. *See e.g.,* (DE 43-12 at 3) ("$31k difference in wallpaper…[initial adjuster] estimated for damaged wall only; [contractor] replacing all wallpaper…[initial adjuster] estimated for standard grade…[contractor] estimate for high grade").

While GuideOne argues that the Court should "reject Landmark's attempt to turn internal insurance adjusting discussion into a fact issue on damages," *see* (DE 46 at 7), the initial figure appears to have been used beyond GuideOne's own internal discussions, and

---

[1] In his deposition, Wade admits to being aware of a dispute between what GuideOne thought was the appropriate estimate and the contractor's repair price—a difference amounting to hundreds of thousands of dollars. (DE 43-5 at 15). Calvin Mack, GuideOne's senior property adjuster, also admitted that there was disagreement by employees of GuideOne when viewing the claim relative to the contractor's estimate. (DE 43-14 at 24).

4

even following the January 24, 2014 discrepancies narrative noted above. On February 4, 2014, Carolyn Partsch sent a correspondence to the insured Laurel Heights enclosing an "estimate of damage" regarding the claim that listed the "Total Repair Cost" as $112,539.43. (DE 43-7 at 2).

GuideOne may ultimately be correct that the figure advocated by Landmark is inaccurate as a gauge of the reasonable cost of repair because it does not include all relevant damages. But the onus of proving damages at trial is on GuideOne, and Landmark has sufficiently shown that a jury could reject GuideOne's figure regarding the reasonable cost of repair. And given the evidence cited by Landmark, granting summary judgment as to damages in this case risks presenting an inaccurate narrative to the jury. Put another way, the Court is not to weigh the evidence or determine credibility at this stage—those remain the duties of the jury. *Anderson*, 477 U.S. at 249, 106 S.Ct. 2505. Since Landmark has produced sufficient evidence disputing GuideOne's figure for the reasonable cost of repair, GuideOne's motion for partial summary judgment as to damages is denied.

*ii. Affirmative Defenses*

GuideOne also moves for summary judgment on several affirmative defenses originally pled in Landmark's Answer. The summary judgment framework is applicable to a defendant's affirmative defenses. *See Resolution Trust Corp. v. Metropole Bldg. Ltd. P'ship*, 110 F3d 64, 1997 WL 160330 (6th Cir. 1997) (table).

Here, Landmark has not responded to GuideOne's motion regarding its First, Fourth, or Sixth affirmative defenses, and summary judgment will be granted. *See* (DE 43 at 11; DE 6). Additionally, the Court will summarily deny GuideOne's motion as to Landmark's Seventh affirmative defense, since GuideOne has now withdrawn that part of the motion. (DE 46 at 14).

As to Landmark's Third affirmative defense, it has provided sufficient evidence, including through the deposition testimony of its expert, that Laurel Heights may have caused and/or contributed to the subject loss—but has offered no evidence of another contributor. (DE 43 at 11-12). Thus, summary judgment is denied on Landmark's Third affirmative defense to the extent Landmark seeks to show Laurel Heights was at fault, and granted to the extent Landmark seeks to show fault by other third-parties.

Finally, the Court finds that GuideOne's remaining arguments as to Landmark's Fifth and Eighth affirmative defenses—namely that Landmark has employed a "litigation-by-surprise" tactic—to be unpersuasive in light of the record. First, the defenses were listed in Landmark's Answer. (DE 6). Second, even if Landmark's earliest disclosure of the factual underpinnings for these defenses was its response in opposition to GuideOne's motion for summary judgment, this was in advance of the discovery extension issued by the Court, which allowed the parties to take depositions of key witnesses such as Carolyn Partsch, Mike Ellison, Mike Pszanka and Wes Davidson. *See* (DE 43; DE 47; DE 51). Given that much of the record in this case has focused on whether GuideOne paid an appropriate amount to the insured, or whether it overpaid in some way, the Court cannot see that an alleged failure to spell out the exact bases for these defenses resulted in surprise or unfair prejudice.

Further, the factual bases produced are sufficient to defeat a motion for summary judgment. *See* (DE 43 at 12-14). However, to avoid any unfair surprise, the defenses are limited to the specific bases filed in Landmark's response to GuideOne's motion for summary judgment. *See* (DE 43); *see also Moore, Owen, Thomas & Co. v. Coffey,* 992 F.2d 1439, 1445 (6th Cir. 1993) ("Moore raised the issue of fraud in his response to the Coffeys' motion for summary judgment and in his affidavit in opposition to the Coffeys' motion. As a result, the Coffeys were aware, or at least should have been aware, that Moore intended to rely on a fraud defense").

**C. Defendant Landmark's Motion for Partial Summary Judgment (DE 53)**

Landmark has also filed a motion seeking partial summary judgment. Landmark argues that GuideOne cannot satisfy its burden of proving damages to the Laurel Heights property because it has not disclosed any opinions regarding the decrease in fair market value of the property. (DE 53-1). Further, Landmark argues that GuideOne lacks sufficient evidence to prove damages for lost rent/revenue and mitigation repairs. *Id.* The Court denies the motion.

*i. Evidence of Diminution in Fair Market Value*

Landmark is incorrect that Guideone must submit evidence of fair market value to prove damages. The case relied upon by Landmark, *Ellison v. R&B Contracting, Inc.,* 32 S.W.3d 66 (Ky. 2000), simply does not stand for such a proposition. *See Ellison,* 32 S.W.3d at 74 ("[A] plaintiff seeking restoration cost damages in an injury-to-property case need not introduce evidence of a diminution in the fair market value of the property in order to state a prima facie case"); *see also Arch Ins. Co. v. Broan-NuTone, LLC,* 509 Fed.Appx. 453, 460 (6th Cir. 2012) ("But Defendant ignores *Ellison's* factual context as well as its statement that plaintiffs need not present evidence of both types of damages as part of a *prima facie* case"). This Court has previously explained *Ellison's* directive:

> [T]he plaintiffs only have to introduce evidence of replacement costs to prove their prima facie case. The defendants can then rebut this evidence with evidence of diminution in value. If the defendants prove that diminution in value is lesser than replacement costs, then the damage is permanent and the jury cannot consider the plaintiffs' evidence of replacement costs. However, if the defendants choose not to present any evidence of diminution in value, then the presumption is that the diminution in value is equal to the replacement costs.

*Worldwide Equipment Enterprises, Inc. v. Broan-Nuton LLC,* 191 F.Supp.3d 684, 690 (E.D. Ky. 2016) (finding that Plaintiffs' evidence of replacement costs, with no evidence of diminution in fair market value, was sufficient to overcome Defendant's motion for summary judgment under *Ellison*). Here, GuideOne has introduced sufficient evidence of the

reasonable cost of repair. Its failure to introduce additional evidence of diminution in fair market value does not warrant summary judgment in favor of Landmark under Kentucky law.

*ii. Mitigation of Damages*

Kentucky law is well-settled that a party must mitigate its damages. *See Davis v. Fischer Single Family Homes, Ltd.,* 231 S.W.3d 767, 780 (Ky. Ct. App. 2007). But "[a] plaintiff's duty to mitigate is not absolute; recovery is diminished only to the extent that the plaintiff fails to mitigate the damages as they would be mitigated by an ordinary, reasonable person under similar circumstances." *Alliant Tax Credit Fund 31-A, Ltd. v. Murphy,* 494 Fed.Appx. 561, 573 (6th Cir. 2012) (quoting *Morgan v. Scott,* 291 S.W.3d 622, 641 n. 49 (Ky. 2009)).

In this case, Landmark argues that Guideone should be precluded from recovering "lost rent and lost revenue because it did not obtain any documentation from Laurel Heights that supported those claims." (DE 53-1 at 8). But attached to Landmark's motion is a letter from Kathy Young, a Laurel Heights employee, to Calvin Mack, a GuideOne Adjuster, in which Young specifically details the lost rent and lost revenue figures, including computation of the foregone rent broken down as to each apartment by month. (DE 53-12). Further, Landmark has attached portions of Kathy Young's deposition in which she explains that the rent figures used were identical to what the renters would have paid prior to the loss. (DE 53-13). Attacking the credibility of the produced documents is best left for trial.

Landmark also argues that Laurel Heights chose not to collect rent money from two residents who had been displaced due to water damage, but were relocated to other rooms that Laurel Heights had available. Whether recovery should be diminished by this amount turns on whether an ordinary, reasonable person under similar circumstances would have mitigated the damages. *Alliant Tax Credit Fund 31-A, Ltd.,* 494 Fed.Appx. at 573.

8

Landmark has cited the Court to no caselaw concluding that such damages are inherently unreasonable, and the Court finds this to be a question for the jury.

Finally, Landmark asks the Court to grant summary judgment on mitigation repairs recommended by a licensed hygienist and totaling $256,133.64. (DE 53 at 9). Landmark argues that GuideOne has failed to disclose a licensed hygienist as an expert witness, and therefore cannot carry its burden to prove the damages were reasonable and necessary. But GuideOne has disclosed a damages expert, Scott McCurdy, who personally inspected the Laurel Heights facility for damage and implemented the hygienist's protocol when performing the remediation work. (DE 39-13 at 10). And generally, an expert may rely on facts and data that he "would normally use in forming an opinion in his area of expertise." *Mannino v. Int'l Mfg. Co.,* 650 F.2d 846, 851 (6th Cir. 1981). It is clear that McCurdy has extensive experience as a licensed contractor performing disaster remediation work on multifamily and senior living facilities. McCurdy is prepared to testify that the remediation work, which implemented the hygienist's protocol, was reasonable and necessary. Landmark has not shown that GuideOne lacks sufficient evidence for a reasonable jury to find in its favor and summary judgment is denied at this time.

However, the Court recognizes that Landmark has also filed a more detailed motion in limine, arguing that the mitigation damages fall outside the scope of McCurdy's scientific, technical or other specialized knowledge. *See* (DE 60 at 4-8). Considering a hearing may be required to resolve the potential *Daubert* issue, the Court finds that the scope of McCurdy's expertise is more properly determined under the pending motion in limine. (DE 60).

### III. CONCLUSION

Accordingly, and being otherwise sufficiently advised, the Court **HEREBY ORDERS** that:

(1) Plaintiff GuideOne Elite Insurance Company's Motion for Summary Judgment (DE 39) is **GRANTED IN PART** and **DENIED IN PART**, consistent with the foregoing opinion; and

(2) Defendant Landmark Sprinkler, Inc.'s Motion for Summary Judgment (DE 53) is **DENIED**.

Dated September 7, 2018,

KAREN K. CALDWELL, CHIEF JUDGE
UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY